```
                                                       FILED

                                                   2004 JUL -9  A 8: 45

                                                   U.S. DISTRICT COURT
              UNITED STATES DISTRICT COURT         BRIDGEPORT, CONN
                  DISTRICT OF CONNECTICUT
```

| | | |
|---|---|---|
| JUDY STAIB, | : | CIVIL ACTION NO. |
|     Plaintiff, | : | 3:02-CV-1157 (JCH) |
| | : | |
| v. | : | |
| | : | |
| DANBURY BOARD OF EDUCATION, | : | |
|     Defendant. | : | JULY 7, 2003 |

**MEMORANDUM IN SUPPPORT OF DEFENDANT'S CROSS-MOTION
FOR ENTRY OF CONSENT JUDGMENT AND IN OPPOSITION TO
PLAINTIFF'S MOTION FOR ENTRY OF CONSENT JUDGMENT**

The defendant, Danbury Board of Education ["the Board"], hereby submits its Memorandum in Support of Defendant's Cross-Motion for Entry of Consent Judgment and in Opposition to Plaintiff's Motion for Entry of Consent Judgment. With this memorandum, the Board vigorously objects to the plaintiff's outrageous attempt to steer this court away from the January 20, 2004 agreement that she confirmed in writing through her counsel on January 21, 2004 and to instead attempt to force the Board into a settlement to which it never agreed. The Board also submits this memorandum in support of its own cross-motion seeking enforcement of the January 20, 2004 agreement which the plaintiff's attorney confirmed in writing the following day, January 21, 2004, and which was reduced to a formal instrument on February 18, 2004.

As noted, on January 21, 2004, the plaintiff's attorney confirmed by letter the parties'

January 20, 2004 settlement, writing to the Board's counsel: "I am writing to confirm that we agreed on January 20, 2004, that this case would settle for $32,551.80. I am glad we were able to reach a compromise." See 1/21/04 L. Rosenblatt Correspondence to M. McKeon, a copy of which is attached to the Plaintiff's Memorandum as Exhibit C and which, for the convenience of the court, is also appended hereto as Exhibit A. The plaintiff's attorney's January 21, 2004 correspondence is the *only* document among all those submitted by the plaintiff as exhibits which manifests clear and unconditional contractual intent. Exhibit A. It is not a proposal; it is not an offer; it is not an assertion of what an adverse party purportedly stated. As the plaintiff's counsel states in that January 21 letter, it is a confirmation that the parties had "*agreed* on January 20, 2004, that this case would settle for $32,551.80." Id. (emphasis added).

Even thought the plaintiff submitted this January 21, 2004 letter as an exhibit with her June 11, 2004 Plaintiff's Memorandum in Support of Motion for Entry of Consent Judgment, she now asks that the court ignore the settlement agreement expressly confirmed therein and instead enforce an unsigned draft proposal. In sharp contrast, the Board's cross-motion simply that the court enforce that January 20, 2004 agreement confirmed by the plaintiff's attorney on January 21, 2004 and subsequently set forth in the Board's February 18, 2004 formal agreement.

In support of its cross-motion and in opposition to the plaintiff's motion, the Board states as follows:

1.  In a January 20, 2004 telephone conversation between their respective counsel,

2

the parties agreed to resolve this litigation by payment of $32,551.80. Exhibit A. As noted, that agreement was confirmed by the plaintiff's attorney on January 21, 2004, when he wrote to the Board's counsel: "I am writing to confirm that we agreed on January 20, 2004, that this case would settle for $32,551.80. I am glad we were able to reach a compromise." See 1/21/04 L. Rosenblatt Correspondence to M. McKeon, a copy of which is attached to the Plaintiff's Memorandum as Exhibit C and which, for the convenience of the court, is also appended hereto as Exhibit A.

    2.    In accordance with the parties' January 20, 2004 agreement, on February 18, 2004, the Board's counsel reduced the agreement to a formal Settlement Agreement and Release that provided in relevant part:

> 1. Ms. Staib shall execute both originals of this Settlement Agreement and Release [collectively "the Agreement"], after which the Agreement shall be forwarded to the Board for its signature of both originals. Within three weeks following the Board's receipt thereof, the Board shall execute the Agreements, retain one fully executed original, and return the other fully executed original to Ms. Staib's attorney *along with a check in the amount of $32,551.80*, made payable as follows: "Law Offices of Leon M. Rosenblatt, As Trustee for Judy Staib."

See Settlement Agreement and Release, a copy of which is appended hereto with 2/18/04 M. McKeon Correspondence to L. Rosenblatt as Exhibit B, p. 1 (emphasis added).[1]

---

[1] Significantly, the plaintiff neglected to include among her exhibits a the original Settlement Agreement and Release that the Board's counsel provided to her attorney on February 18, 2004 – which, as noted, the Board has appended hereto as Exhibit B – thereby depriving the court of the opportunity to see the substantial difference between the Board's February 18, 2004 Settlement Agreement and the plaintiff's March 1, 2004 response.

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

3. The plaintiff's attorney responded on March 1, 2004 by sending to the Board's counsel a document in which the plaintiff had removed all of the provisions that had been in the Board's February 18, 2004 Agreement. See Plaintiff's 3/04 Settlement Agreement and General Release, a copy of which is appended hereto as Exhibit C. For example, the plaintiff's response deleted the February 18, 2004 draft Agreement's confidentiality provision, its non-disparagement provision, its choice-of-law provision, its "integrated agreement" provision, and, most importantly, the language in enumerated paragraph seven that is required by the Older Workers' Benefits Protection Act, 29 U.S.C. §§623, *et seq.* See Exhibits B & C.

4. The plaintiff's undated March 2004 document also deleted the language quoted in enumerated paragraph 2 hereof and replaced it with a provision demanding that the $32,551.80 settlement be considered "part of Staib's regular 2004 salary" with "normal deductions and a W-2 form ... issued." Exhibit C, p. 2.

5. Due to the press of competing obligations, the Board's counsel and the plaintiff's attorney did not discuss the plaintiff's response until March 30, 2004.[2] During that conversation, the Board's counsel expressed concern over the plaintiff's wholesale gutting of the Board's

---

[2] The plaintiff submitted as Exhibit G to her June 11, 2004 Plaintiff's Memorandum a letter that her attorney allegedly sent to the Board's counsel on March 26, 2004. The Board's counsel has no recollection of ever having seen that letter prior to his review of the June 11 Plaintiff's Memorandum. Counsel certainly has no recollection of ever having left the March 23, 2004 voice mail message that the March 26 letter attributes to him. In any event, on March 30, 2004 the parties' respective attorneys discussed what counsel's contemporaneous time records described as "*requested* revisions to *proposed* settlement agreement." Affidavit of Michael P. McKeon, a copy of which is appended hereto as Exhibit D, ¶9, and Attachment thereto (emphasis added).

February 18, 2004 Settlement Agreement and informed the plaintiff's attorney that the Board wanted the deleted confidentiality provision, non-disparagement provision, choice-of-law provision, "integrated agreement" provision, and Older Workers' Benefits Protection Act provision reinstated into Agreement. Exhibit D, ¶10. The Board's counsel also noted that he did not know whether there would be a problem with the plaintiff's demand that the settlement money be treated as wages with the appropriate deductions and that the Board might be amenable to it, but counsel added that he could not commit to it as he had not as yet discussed it with the Board. Id., ¶11.

6. In order to expedite matters and to avoid an ongoing, and piecemeal, facsimile and telephone colloquy regarding the numerous provisions the Board wanted reinserted in the Agreement and the provision the plaintiff was demanding with respect to the treatment of the settlement money, the Board's counsel agreed to provide the plaintiff's attorney with another draft that included the provisions each party was seeking so that both parties could simultaneously review *all* of the other party's requested language and either accept or reject them at the same time. Exhibit D, ¶11. Furthermore, counsel noted that as the Board would have to review and formally approve by vote any settlement agreement, he wanted to avoid flooding it with numerous rafts of proposed agreements and thereby risking its ire. Id., ¶11.

7. During the March 30, 2004 conversation, the Board's attorney made it absolutely clear that this draft would be nothing more than that -- a draft. As counsel's contemporaneous

5

time records note, the discussion was about *"requested* revisions to *proposed* settlement agreement." Exhibit D, Attachment (emphasis added). To reinforce this, the Board's counsel stamped "DRAFT" on all three pages of the revised draft proposal. See Settlement Agreement and Release, a copy of which is appended hereto with 4/2/04 M. McKeon Correspondence to L. Rosenblatt as Exhibit E. Furthermore, in his April 2, 2004 cover letter, counsel noted: "Enclosed is a revised *draft* of the *proposed* Settlement Agreement and Release." Exhibit E (emphasis added). That echoed the language counsel used in his February 18, 2004 cover letter to the plaintiff's attorney regarding the initial proposed Agreement, in which counsel wrote: "Enclosed is a *draft* of the *proposed* Settlement Agreement and Release." Exhibit B (emphasis added).[3]

8.    As noted, during the March 30, 2004 conversation, the Board's counsel informed the plaintiff's attorney that the Board had not yet reviewed, much less approved, the proposed language regarding the treatment of the settlement money. Exhibit D, ¶12. And, the plaintiff's attorney knew from its cover letter that the April 2, 2004 document -- already stamped "DRAFT" -- was a "draft" of a "proposed" agreement and that a final agreement would not be promulgated unless the draft proposal was acceptable to the Board as well as to the plaintiff.

---

[3] It is noteworthy that although the language in the February 18, 2004 cover letter is essentially identical to that in the April 2, 2004 cover letter, and although like the April 2 draft proposal the February 18 agreement has "DRAFT" stamped on every page, the plaintiff is making no attempt to enforce the February 18 draft Agreement. Perhaps that is another reason why, again, the plaintiff neglected to include a copy of that February 18 Agreement with her June 11, 2004 Plaintiff's Memorandum.

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

9. The Board's counsel did not hear from the plaintiff's attorney regarding the plaintiff's opinion of the April 2, 2004 "DRAFT" agreement. It is significant that unlike her attorney's January 21, 2004 correspondence confirming the parties' actual January 20, 2004 settlement agreement, the Board is unaware of, nor has the plaintiff produced, any comparable letter or document expressing or confirming a belief that the April 2 draft constituted the agreement of the parties. In fact, despite having in her March 2004 proposal deleted all of the provisions from the Board's February 18, 2004 draft agreement, as of this date the plaintiff has still not indicated whether she agrees to their reinstatement in the April 2 draft.

10. On May 13, 2004, the Board's counsel informed the plaintiff's attorney that the Board would not, and in fact could not, agree to the plaintiff's demand that the settlement monies be treated as back wages with the consequent employer deductions and contributions. See 5/13/04 M. McKeon Correspondence to L. Rosenblatt, a copy of which is appended hereto as Exhibit F. Counsel noted that the plaintiff's proposed treatment of the settlement amount would obligate the Board to make social security and related contributions that would increase the value of the settlement beyond the $32,552.80 to which -- as the plaintiff's attorney confirmed on January 21, 2004 -- the parties had agreed. Id. Counsel further noted that such a treatment of the settlement demand would trigger pension obligations on behalf of the City of Danbury, that the City was not disposed toward voluntarily making these payments, and that as the City was never a party to this litigation it could not be compelled to make these pension contributions. Id.

7

11.     The plaintiff never responded to the Board's May 13, 2004 correspondence until her June 11, 2004 Motion.

12.     As repeatedly noted, the plaintiff's attorney plainly and unambiguously confirmed the parties' contractual intent in his January 21, 2004 correspondence to the Board's counsel, in which he wrote: "I am writing to *confirm that we agreed on January 20, 2004, that this case would settle for $32,551.80*. I am glad we were able to reach a compromise." Exhibit A. See also Plaintiff's Exhibit C (emphasis added). "Clients generally are bound by the acts of their attorneys." Monroe v. Monroe, 177 Conn. 173, 181, 413 A.2d 819, *appeal dismissed*, 444 U.S. 801, 100 S.Ct. 20, 62 L.Ed.2d. 14 (1979). In this case, the plaintiff's attorney bound her to the terms of the parties' agreement as arrived at during a telephone conversation on January 20, 2004, confirmed in writing by her attorney on January 21, 2004, and set forth in the February 18, 2004 Settlement Agreement and Release.

13.     The unconditional language of the plaintiff's counsel's January 21, 2004 correspondence militates against the plaintiff's assertion that, in fact, the parties had agreed to something altogether different. Even the precision of the settlement figure, $32,551.80 -- negotiated down to how many *cents* the plaintiff would receive – undercuts the plaintiff's assertion that the parties had actually agreed to that amount *plus* social security and pension contributions. There is nothing in the record that rivals the certainty of contractual intent set forth in the plaintiff's attorney's January 21 letter. There is nothing in the record that equals the

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

unambiguous acknowledgement and confirmation of agreement contained in the plaintiff's January 21 letter.

14.    Despite this, the plaintiff strenuously demands that the court ignore her own counsel's January 21, 2004 confirmation of the parties' January 20, 2004 agreement. The plaintiff's position is that rather than her attorney's signed correspondence "confirm[ing] that we agreed on January 20, 2004, that this case would settle for $32,551.80," this court should instead be guided by an unsigned document that is prominently stamped "DRAFT," that follows caveats by the Board's counsel to her attorney that the Board had not yet seen the draft, much less approved it, and that is accompanied by a cover letter noting that it is a "draft" of a "proposed" agreement" that must still be deemed "acceptable."[4]

15.    The Board remains willing to settle this lawsuit in accordance with the terms agreed to on January 20, 2004, confirmed in writing by the plaintiff's attorney on January 21, 2004, and set forth in the subsequent February 18, 2004 Settlement Agreement and Release. As noted, the February 18, 2004 draft Agreement incorporates the terms of the parties' January 20, 2004 settlement and the provisions therein are part-and-parcel of that settlement. Needless to

---

[4] The Board notes that the similarly stamped "DRAFT" agreement of February 18, 2004 contains the following provision: "This Agreement constitutes the full agreement and understanding of the parties regarding the settlement of the Lawsuit. Any modifications of this Agreement can only be effectuated in writing, signed by both Ms. Staib and the Board." Exhibit B, p. 2, ¶5. Therefore, employing the plaintiff's reasoning that that the terms of an unsigned draft agreement with identical cover language should be enforced, the Board would submit that in accordance with the February 18, 2004 Agreement, because the April 2, 2004 draft is unsigned by either party, it is of no force or effect and that the February 18 should instead be enforced.

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

say, the Board would not have agreed to any settlement that did not include a full release, including the language required under the Older Workers' Benefits Protection Act, of all claims, not just those contained in the present lawsuit. Thus, the Board respectfully requests as part of its cross-motion that the provisions of the February 18, 2004 Settlement Agreement and Release be enforced in conjunction with the agreement articulated in the plaintiff's attorney's January 21, 2004 correspondence.

THEREFORE, for the reasons set forth herein as well as the Board's accompanying Cross-Motion, the Board respectfully requests that this court deny the Plaintiff's Motion for Entry of Consent Judgment and instead grant the Board's Cross-Motion seeking the enforcement of the parties' January 20, 2004 settlement as confirmed by the plaintiff's attorney on January 21, 2004 and set forth in the February 18, 2004 Settlement Agreement and Release.

THE DEFENDANT,
DANBURY BOARD OF EDUCATION

_____
Michael P. McKeon
Federal Bar No. ct02290
Sullivan, Schoen, Campane & Connon, LLC
646 Prospect Avenue
Hartford, Connecticut 06105-4286
Telephone: (860) 233-2141
Facsimile: (860) 233-0516
E-Mail: mmckeon@sscc-law.com

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

## CERTIFICATION

This is to certify that a copy of the foregoing Memorandum in Support of Defendant's Cross-Motion for Entry of Consent Judgment and in Opposition to Plaintiff's Motion for Entry of Consent Judgment was sent via first-class mail, postage prepaid, on this 7th day of July 2004 to Leon M. Rosenblatt, Esq., Law Offices of Leon M. Rosenblatt, 10 North Main Street, Suite 214, West Hartford, Connecticut 06107-1988.

Michael P. McKeon

11